We'll turn to the next case, which is R.M. Bacon v. Saint-Gobain, and we'll hear first from the appellant. Thank you, Your Honors. Michael Daneker on behalf of the defendant and appellant, Honeywell. We're here today because the district court ignored a fundamental principle of New York law limiting the scope of a tortfeasor's duty to those who have sustained property damage. This principle, clearly articulated in the Court of Appeals 532 Madison decision, should have resulted in the dismissal of the negligence claims of R.M. Bacon, a business, and Michael Bacon, a property owner. Are you treating them the same, the business and the property? No, Your Honor. I think the business and the property are very differently situated. R.M., the business, does not own any real property. Michael Bacon, the individual, owns the property at 510 South Street. It's the property on which the business sits. Correct. R.M. asserts a claim entirely for lost profits, and that claim is based essentially on a stigma theory of damages. Michael Bacon at least alleges that there is PFOA present on his property. So let me first talk about R.M. and the lost profits claim. In the amended complaint, R.M. asserts a pure stigma theory of damages. R.M., as a business, claims that the general presence of PFOA contamination in groundwater and municipal water around the village depressed home prices. It also claims that EPA's statements, that the state's designation of certain sites as banks, that the Department of Health's blood testing program and other factors resulted in a general economic depression in the area, and as a result, its customers became either unable or unwilling to engage in home improvement projects and hire it. These kinds of stigma lost profit claims are squarely foreclosed by 532 Madison. Which only claimed economic loss, correct? These are only claims for economic loss, just like the claims in 532 Madison. But isn't R.M. Bacon also claiming that they lost business because the water supply was just a building falling? R.M. Bacon is claiming that they lost business because other people, not because they couldn't proceed because the water supply was contaminated. They're claiming that the water supply being contaminated made their customers less likely to spend money on home improvement. The same way purely economic loss, you say? Purely economic loss. R.M. doesn't own a well, doesn't have any argument that it owns a well. Michael Bacon may have those arguments, but R.M. does not. Just like in 532 Madison, the potential plaintiffs who were within the zone of closure, right? The building collapse resulted in a 15 square block area of Manhattan being closed to traffic. Those businesses were never touched by whatever fell from 532 Madison. They were never invaded as R.M. Bacon's property was invaded by the toxic substance. R.M. Bacon doesn't own property to have been invaded by the toxic substance. Michael Bacon owns property. R.M. is purely a business, just like a business on 48th Street in Manhattan within the zone of closure. And R.M.'s sole claim is not even that its business was impacted by whatever might be present on Michael Bacon's property. Whatever's present or not on Michael Bacon's property is irrelevant to R.M.'s claim. What R.M. says is that customers within the Hoosick Falls area, including customers whose property may have been contaminated with PFOA and customers whose property may not have been, refused to hire me, and so I lost profits. And that claim is an economic loss claim that's foreclosed by 532 Madison. Indeed, the court's discussion in 532 Madison of the Beck and Dunlop cases is instructive on this point. In Beck and Dunlop, those are two cases that arose from the same set of operative facts. There was in those cases an FMC company factory that had an explosion. The explosion rained debris, stones and other debris, on nearby properties, including the Dunlop Tire property. And it also created an area-wide electrical outage that impacted a nearby Chevrolet plant. The Dunlop Tire plaintiffs, whose property had been impacted by stones and debris, were allowed to proceed, and they were allowed to proceed because there was physical damage to their property. They could also assert lost profits or lost economic opportunity as a consequential damage. In the Beck case, the plaintiffs were Chevrolet employees who lost wages because of the electrical outage. And the Beck plaintiffs were not allowed to proceed. 532 Madison cited this with approval. And here, because they had suffered only economic loss, here, RM's claim is very similar to the Beck plaintiffs' claims. In Beck, the employee's sole claim was for lost wages, just like RM's sole claim is for lost profits. The Beck plaintiffs lost wages because their employers made a decision not to pay them when they closed the plant because of the absence of electricity. Just like RM allegedly lost profits when its potential customers became less willing to move forward with home improvement. Unfortunately, the district court ignored the limitations set forth in 532 Madison, creating a requirement for physical damage to property in order for these kinds of claims to proceed, and instead created out of whole cloth a zone of contamination test, and found that a defendant's duty extends to all businesses within a zone of contamination, regardless of whether those businesses claim any injury to property, and regardless of whether they even own any property. This approach is problematic for several reasons. Most importantly, 532 Madison itself rejected this kind of geographic approach. Indeed, the court of appeals there recognized that the appellate division had struggled to create a geographic zone approach, and it said that geographic zone was unacceptable because it was both too broad and too narrow, and it was too narrow because it excluded producers and suppliers who may have lost business because they couldn't get into the closure zone. Second, the zone of contamination approach itself creates its own inequities. Why should, for example, a plumber who lives in Troy, outside of any zone of contamination, but who works on the very same home improvement project that RM works on, be foreclosed from bringing a lost profits case while RM can bring it? Any line drawing exercise is going to create some inequities with people who are inside and outside, but doesn't the notion of a zone of contamination that is discernible from measuring PFOA and water levels around the Superfund site at the center, for example, distinguish this in some ways from all of the businesses that were impacted in 532 Madison? I mean, yes, in 532 Madison there was an area that was absolutely closed off for a period, but I think that was for two weeks, and there was continuing effects well outside that, and really for people who are vertically in the zone as well as on the street level. So I think the district court felt that there was some ascertainability here that made it different from 532. He was wrong, though, you say? I believe he was wrong. I think there are a number of responses to that. The first is that the 532 Madison court recognized that any kind of line drawing is necessarily going to create some kind of arbitrariness, and that when you engage in policy-driven line drawing, you're doing that. And the court then went on to say that that's exactly what it was doing by creating a requirement for physical property damage. I think the second answer is that the zone of contamination is not as neatly circumscribed as the district court may have made it out to be, even on the facts of this case. The complaints certainly don't describe a zone of contamination. The municipal water may be definable, but as plaintiffs said in the earlier argument, there are private wells that are contaminated, and there are private wells in the area that are not contaminated. And the third is, what does a zone of contamination mean? That in and of itself is policy-driven line drawing. Is it a single molecule of any industrial chemical? Is it anywhere that it exceeds regulatory limits? There's no clear way to draw those lines. Am I right in understanding that the federal government, I don't have much familiarity with this, in designating a Superfund site, they look about remediation. They're focusing on how to deal with remediation in a very circumscribed area. But they don't afford any relief for people who might be affected by that Superfund site and who are outside the delimited area. Is that right? That's generally correct. When the federal government designates a Superfund site, they usually designate a facility or an area around a facility for cleanup or remediation. And it does not address tort claims of people who may live in the area. What kind of relief is available to those people who, like the business here, were clearly devastatingly affected? It depends. Again, the relief is available. It depends on what the nature of an injury might be. If a person has a physical injury, if a person is ill or sick, they can bring tort claims. If a person has physical damage to property, those claims are available and open. But if a plaintiff is bringing merely a lost profits kind of claim, which is what RM has brought, those claims are foreclosed by state tort law under 532 Madison. Maybe there's some kind of insurance coverage that one would have, but who knows? That would be up to the business. I don't know the answer to that. Counsel, you've requested no time for rebuttal. I've requested no time for rebuttal. Thank you. I believe I have. Oh, I guess it's over. Thank you. May it please the Court. Good morning, Your Honors. My name is William Walsh. I represent the plaintiff respondent in this case, both Michael Bacon and RM Bacon. I wanted to speak about the economic loss issue first. Certainly, Your Honor. Going to the question before, the question is whether or not RM Bacon had an opportunity here to recover damage. If this was solely an instance where RM Bacon was 10, 15 miles away, not exposed to the contaminant, but had done all of his business there, . . . Could you raise the microphone slightly? I'm sorry. Does that help, Your Honor? That's much better. I apologize. In this case, however, as alleged, where RM Bacon conducts its business, the property on which it is situated was contaminated with PFOA. Talk just about RM's losses. I think that's what Mr. Danik has spent some time talking about. Why doesn't 532 Madison determine that particular cause of action for economic loss to the business? Because people weren't doing anything to their houses after this happened. Several reasons, Your Honor. First, as Judge Kahn correctly noted below, defendant in this case has completely misconstrued the purpose of 532 Madison. 532 Madison is a question of the threshold issue of duty. And the question was whether or not the individuals who were responsible for the accident at 532 had a duty to those other businesses around the area. And the determination on that and the question of duty was no. As to damages, with regard to 532 specifically, there was a determination that those businesses directly underneath, those that had the brick and mortar come down on them, would be able to recover not only the cost of damages incurred by the shattered window on a storefront, perhaps, but all the related consequential damages. And New York law has recognized those impacted parties can recover all related consequential damages for the last 120 years. If the bricks fell on a store, they could recover. But what if their only claim was that they lost business because people couldn't get to their store? Those claims were not allowed to proceed. That's correct, Your Honor. But in this instance, the PFOA was, in essence, brick and mortar that Honeywell and St. Gobain were launching into the air from their facilities and was raining down on the entire community. The allegations in this complaint reflect that PFOA was falling throughout the community. You say it makes no difference who owned the property. Because Mr. Bacon himself owned the property, right? The business was just operating in this area. Correct, Your Honor, because R.M. Bacon actually leases the property, so it has current property interest. The question for injury does not require ownership. Haven't we drawn a distinction, or hasn't Judge Kahn drawn a distinction between lessees and landowners? Am I mistaken in that? In regard to Baker, Your Honor, as my recollection on his decision there, what he was looking at was diminution of property value. And to the extent that a property has lost property value, then the owner is the only one who's going to be able to recover that, not the renter. In this case, since R.M. Bacon was leasing the property, it did have existing property interest. Those interests have been recognized by New York courts for over a century as sufficient for not only the ability to recover the damages that are related, but the consequential damages that are related as well. Indeed, opposing counsel referenced Dunlop Tire and Rubber Corp. case there. In that instance, you had a neighboring property that had an explosion. The brick and debris that went into Dunlop's property did cause some damage. It caused about $16,000 worth of damage based on the allegations and the complaint. It also knocked down related power towers that were not on that property. Those power towers owned by Niagara Mohawk caused a power outage, which forced Dunlop to be closed for 24 hours. That damage, which did not occur on Dunlop's property, which did not impact Dunlop's property, was in essence within the zone because the blast from that property knocked out not only Dunlop's facility or hurt Dunlop's facility, but it also knocked out Niagara Mohawk's. The impact on Niagara Mohawk, which was off-site and not there, was $170,000. The court in the appellate division said that not only could Dunlop recover the $16,000 for damages that it incurred through concussion impact on its property, but it could also recover the $170,000 for related consequential damages, which were within the consequences of the incident but were not directly impacted to the property. Yet the workers at the neighboring plant who lost pay could not recover. And, Your Honor, that was an assessment of duty within the threshold, and because that plant was a mile and a half away, the determination was by the court that there was no duty that was owed there, that the duty was so far away. It was too extenuated that you would be looking at a ripple effect that would go too far beyond. But here, again, we have an instance where you have the defendants in this case having substantially contaminated the entire community. Within that community is R.M. Bacon. R.M. Bacon is an impacted property. Let me ask you in particular, looking at your complaint, could you point to the paragraphs in which you allege that the property on which Bacon was operating was, in fact, contaminated at cognizable levels by Sankoban? I see paragraph 44, the very general obligation that the New York State Department of Environmental Conservation informed plaintiffs that measurable levels of PFOA exist on the 510 South Street property. Upon information and belief, PFOA reached the property from air emissions. So nothing about timing, nothing about levels, nothing about the consequence of that finding. That is so vague as to be meaningless to me. So I'm looking for specific allegations about how the property that your client was the lessee was affected. Tying and connecting the properties, Your Honor, if I recall correctly, paragraph 7 identifies the property where R.M. Bacon operates. 510 South Street, right? That's 510 South Street. Paragraph 44 goes to the contamination that was found on that property. Again, nothing about the actual levels or when the testing was done or how long that persisted. It just says found, informed plaintiffs that measurable levels existed, right? That's correct, Your Honor. And if I recall correctly, it's paragraph 97. The microphone is misbehaving. 97 said people suddenly became distrustful of even the fill that R.M. Bacon provided, though it came from a different area, as they anticipated the fill might contain PFOA. Yes, Your Honor, and an aspect of that fill, the fill that R.M. Bacon was using was both from the location where it was operating as well as from different locations for operation. But again, Your Honor, the- I'm still looking for the actual allegations that you make that Bacon's, that the company's property was contaminated even. So, I mean, we're looking at the cases and comparing them to which nearby businesses suffered, you know, rocks raining down on them, and I'm not really seeing the equivalent in your complaint. I understand, Your Honor, and to the extent that we're missing paragraphs for that, there are, you know, I will take the blame on that, and also a matter of time the complaint was originally drafted in 2016 at a point where the testing had not been substantially done. Outside of the scope, you know, there is additional information that I could provide. Do you believe you could amend the complaint to provide specific information about the levels of contamination on the Bacon property? There is additional information, such as, Your Honor, there has been a POET system that has been added to the property. The purpose of that is in order to filter out PFOA and other contaminants in the water that come up. So there is additional information. But again, we're at a point at the initial pleading spot, and at that point, at this point, the only question is whether there is sufficient information in order to sustain the negligence claim. Judge Kahn found that to the extent that you are looking for information similar to an explosion that resulted in brick and mortar hitting a building, here we have PFOA coming out of the facilities that both St. Cobain and Honeywell operated and resulted in PFOA landing on the property through air emissions throughout. Well, again, the allegations are very conclusory. And since you need to show property damage, I'm trying to understand whether you can allege anything with greater specificity or whether you haven't. I've missed it. You haven't missed it, Your Honor. What I would point to at this stage is, however, the opening sentence within the New York Court of Appeals decision in Jensen, which noted the phrase injury to property embraces actions for damages ensuing from exposure to any substance. So to the extent that at the pleading stage we need to demonstrate the injury to property, the presence of PFOA, the allegation of PFOA on the property, I believe, is sufficient to meet within the standards that New York is using to demonstrate that injury to meet the requirements under negligence. Your Honors, I notice I'm out of time, and you've had a rather busy morning with the related cases. So if you have any other questions, happy to hear them. Thank you. I appreciate your time, Your Honor. Thank you. This panel will take for 15 minutes, and we'll return with a slightly different panel. Thank you. We'll adjourn. Court is adjourned.